1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7 | ELVA GARICA,

| NO:  CV- 12-3064- RMP

8 |                          Plaintiff,

9 | v.

| ORDER GRANTING CINTAS
CORPORATION'S MOTION FOR
SUMMARY JUDGMENT

CINTAS CORPORATION NO. 3,

10 |                          Defendant.

11

12    **BEFORE THE COURT** is an Amended Motion for Summary Judgment

13   filed by Defendant Cintas Corporation No. 3 ("Cintas").  ECF No. 20.  The Court

14   heard the motion without oral argument.  Mark J. Chumley, Jennifer W. Colvin,

15   and Franklin L. Dennis represented Cintas before the Court.  Robert M. Boggs

16   represented the Plaintiff, Elva Garcia.  The Court has considered the briefing and

17   the file, and is fully informed.

18                          BACKGROUND

19    In July of 2003, Ms. Garcia went to work in the garment area of Cintas'

20   production facility in Yakima, Washington.  Ms. Garcia initially worked in a

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY
JUDGMENT ~ 1

"Second Sort" position where she was required to move garments on hangers from one rack to another while sorting them in appropriate groupings.  In late 2009 or early 2010, Ms. Garcia was moved into a newly created position where her primary duties were folding coveralls and straightening and organizing used hangers.

In August of 2011 Ms. Garcia complained of pain in her left wrist occurring during her shift folding coveralls and sorting hangers.  Ms. Garcia filled out a written incident report disclosing the injury on August 29, 2011.  Ms. Garcia indicated on the incident report that she had been experiencing pain for approximately two weeks before submitting the incident report.  Cintas' company policy is that employees must promptly disclose any injuries.  Ms. Garcia was given a verbal warning for failing to properly report the pain in her left wrist.

Once Ms. Garcia filled out the incident report disclosing the pain in her wrist, she was taken to a clinic and her injury was evaluated.  Ms. Garcia's injury was diagnosed as de Quervain's tenosynovitis in her left wrist.  Ms. Garcia was ordered to wear a wrist splint and to attend physical therapy sessions for the ailment.  In addition, one of Ms. Garcia's supervisors taught her how to fold coveralls with one hand so as to minimize the use of her left wrist.  Ms. Garcia filed a workers' compensation claim related to this event.

It is clear from the record that Ms. Garcia's wrist injury eventually improved to the point where she was pain-free, although the exact timing is disputed by the

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY
JUDGMENT ~ 2

1    parties.  Cintas argues that Ms. Garcia told its third-party workers' compensation

2    claims administrator that she was pain-free in early December.  Ms. Garcia's

3    workers' compensation was closed on December 2, 2011, with her consent and

4    based on her statements to the workers' compensation administrator that she was

5    pain-free.  Ms. Garcia claims that she told the administrator that she was pain free

6    approximately one month before the claim was closed, in early November.  It is

7    undisputed that Ms. Garcia had ceased using the wrist splint that had been

8    prescribed to her by early November 2011.

9    Cintas moved Ms. Garcia to the "First Sort" position in mid-November to

10   fill in for an employee who was absent on medical leave. The "First Sort" position,

11   like the "Second Sort" position, requires the employee to move garments on

12   hangers from one rack to another while sorting them in appropriate groupings.  At

13   the time of the move, Ms. Garcia informed the plant manager, Jason Stewart, that

14   in her opinion she could only work in the position for a couple of weeks due to her

15   wrist.

16   It is undisputed that Ms. Garcia's wrist began to hurt again at some point

17   while she was in the First Sort position, although the parties disagree as to the

18   onset date of her pain.  Ms. Garcia claims that her wrist began to hurt again in mid-

19   to late-November after she was put into the First Sort position.  Ms. Garcia

20   testified to this point in her deposition and in a declaration submitted in opposition

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY
JUDGMENT ~ 3

1  to summary judgment. Cintas introduced documentary evidence, including

2  medical records and an incident report completed and signed by Ms. Garcia in

3  January, 2012, stating that her wrist had begun to hurt around December 26, 2011.

4      The parties also dispute when it was that Ms. Garcia informed Cintas that

5  her wrist had begun to hurt again. Ms. Garcia originally testified at her deposition

6  that she told Mr. Stewart at the time of her move to the First Sort position that, in

7  her opinion, she could only do the position for approximately two weeks because

8  of her wrist. Ms. Garcia further stated that after she was moved to the First Sort

9  position, she would periodically ask Mr. Stewart if he had found anyone else for

10  the position but did not specify that her inquiries were due to her wrist. Ms. Garcia

11  stated that she simply assumed that Mr. Stewart knew the purpose of her inquiries

12  because she had injured her wrist in the past.

13      However, when pressed further at her deposition, Ms. Garcia stated that she

14  explicitly told Mr. Stewart that her wrist had begun to hurt again in late-November.

15  Ms. Garcia additionally stated that she spoke to him regularly after this point, and

16  that it was "in her voice" that her wrist was hurting. Ms. Garcia also stated in her

17  declaration in opposition to summary judgment that she explicitly told Mr. Stewart

18  in late-November that her wrist had begun to hurt again. However, Ms. Garcia

19  concedes that she never completed or submitted an incident report or filed a

20  workers' compensation claim regarding her November wrist pain, although she

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY
JUDGMENT ~ 4

previously had been instructed around the time of her August 2011 injury that she needed file incident reports and report injuries promptly.

There is no dispute that on January 3, 2012, Ms. Garcia expressly told Mr. Stewart that she was no longer able to work the First Sort position due to the pain in her wrist.  Ms. Garcia was told to fill out an incident report regarding the injury and to see a doctor regarding her work restrictions.  On the morning of January 5, 2012, Ms. Garcia provided the supervisor on duty at the time, Jonathan White, with a note from her doctor explaining that she needed to limit the use of her left wrist for about three to four weeks due to de Quervain's tenosynovitis.

After reviewing the doctor's note, Mr. White suggested that Ms. Garcia perform the First Sort position one handed so as to limit the use of her left wrist.  Ms. Garcia testified that she refused to attempt to work at the First Sort position with one hand because she believed that it would be awkward and would slow down production in the facility.  Mr. White then suggested that Ms. Cintas could work in another position, known as the "Shakeout" position, using only her right hand.  Ms. Garcia testified that she refused to attempt the Shakeout position because she believed that it could not be performed with one hand.  Ms. Garcia repeatedly told Mr. White that she wanted to be returned to her prior position folding coveralls and organizing hangers.

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY JUDGMENT ~ 5

1    The parties agree that Ms. Garcia then became angry and raised her voice.

2    During the exchange, Ms. Garcia eventually stated that she would just stay in the

3    First Sort position, but Mr. White told her that she could organize hangers instead

4    for the rest of the day.  When the plant manager, Mr. Stewart, arrived at the factory

5    later that morning, he spoke with Ms. Garcia and Mr. White regarding the

6    exchange and suspended Ms. Garcia's employment.  Ms. Garcia's employment

7    was terminated on January 18, 2012.

8         Ms. Garcia filed suit against Cintas in Yakima County Superior Court on

9    March 14, 2012.  ECF No. 1.  Ms. Garcia's amended complaint asserted claims for

10   failure to accommodate a disability under the Washington Law Against

11   Discrimination ("WLAD"), RCW 49.60.180; disability discrimination under the

12   WLAD, RCW 49.60.180; retaliation under the WLAD, RCW 46.60.210;

13   retaliation for pursuing workers' compensation benefits under RCW 51.48.025;

14   and tortious injury under RCW 51.24.020.  Cintas removed the case to federal

15   court on the basis of diversity jurisdiction.  ECF No. 1.

16        Cintas filed for summary judgment on all of Ms. Garcia's claims.  Ms.

17   Garcia opposed summary judgment on her claim for failure to accommodate a

18   disability under the WLAD, RCW 49.60.180, but conceded that summary

19   judgment was appropriate on all remaining claims.

20

DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). A "material" fact is one that is relevant to an element of a claim or defense, and whose existence might affect the outcome of the suit. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The party asserting the existence of a material fact must show "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The mere existence of a scintilla of evidence is insufficient to establish a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden then shifts to the non-moving party to "set out specific facts showing a genuine issue for trial." *Id.* at 324 (internal quotations omitted). The nonmoving party "may not rely on denials in the pleadings, but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). In deciding a motion for

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY JUDGMENT ~ 7

1  summary judgment, the court must construe the evidence and draw all reasonable

2  inferences in the light most favorable to the nonmoving party.  *T.W. Elec. Serv.*,

3  809 F.2d at 631-32.

4      Ms. Garcia has abandoned her claims for disability discrimination under the

5  WLAD, retaliation under the WLAD, retaliation for pursuing workers'

6  compensation benefits, and tortious injury.  ECF No. 38, at 5-6.  Therefore, the

7  Court need only evaluate her claim for failure to accommodate under the WLAD.

8      A disabled employee may press a claim under RCW 49.60.180 for an

9  employer's failure to reasonably accommodate their condition.  *Doe v. Boeing Co.*,

10  121 Wn. 2d 8, 17 (1993) (en banc).  To prove a claim for failure to accommodate,

11  the plaintiff must show that he or she (1) had an abnormality that substantially

12  limited their ability to perform the job; (2) was qualified to perform the essential

13  functions of the job; (3) gave the employer notice of the abnormality and its

14  accompanying substantial limitations; and (4) that the employer, upon notice,

15  failed to affirmatively adopt available measures medically necessary to

16  accommodate the disability.  *Riehl v. Foodmaker, Inc.*, 152 Wn. 2d 138, 145

17  (2004) (quoting *Hill v. BCTI Income Fund-I*, 144 Wn. 2d 172, 192-93 (2001),

18  *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wn. 2d 214 (2006);

19  *Davis v. Microsoft Corp.*, 149 Wn. 2d 521, 532 (2003)).

20

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY
JUDGMENT ~ 8

The Washington Supreme Court has noted that summary judgment in favor of the employer is seldom appropriate in employment discrimination cases. *Riehl*, 152 Wn. 2d at 144. However, courts may grant summary judgment when the plaintiff fails to raise a genuine issue of fact on one or more elements necessary to establish a prima facie case of discrimination. *E.g.*, *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 777 (2011).

Cintas admits that Ms. Garcia was qualified to perform the essential functions of her job but otherwise contends that Ms. Garcia has not made out a prima facie case for failure to accommodate. The Court must engage in two inquiries under the circumstances of this case: first, when did Cintas' duty to accommodate Ms. Garcia's wrist condition arise under the WLAD; and, second, whether Cintas failed to accommodate Ms. Garcia's condition when the duty arose.

## A. When the duty to accommodate arose

Notice of an employee's disability and physical limitations triggers the employer's burden to take "positive steps" to accommodate the employee's limitations. *Goodman v. Boeing Co.*, 127 Wn. 2d 401, 408 (1995) (quoting *Holland v. Boeing Co.*, 90 Wn. 2d 384, 388-89 (1978)). However, the employer's duty to determine the nature and extent of an employee's disability "does not impose an investigatory duty to question any employee suspected of a disability" and arises only after the employee has initiated the process by providing notice.

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY JUDGMENT ~ 9

*Id.*  The employee bears the burden of proving notice, but effective notice need not disclose "the full nature and extent of the disability."  *See id.* at 408-09.

Cintas initially argues that its duty to accommodate did not arise until Ms. Garcia's conversation with Mr. White on January 5, 2012, because Ms. Garcia had not requested a specific accommodation prior to that point.  But as long as notice is provided, an employee need not formally request an accommodation to trigger the employer's obligation to reasonably accommodate.  *Downey v. Crowley Marine Servs., Inc.*, 236 F.3d 1019, 1023 (9th Cir. 2001) (citing *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 877 n.7 (9th Cir. 1989)).  The question is not whether Ms. Garcia properly requested an accommodation, but whether Cintas was on notice of her disability and physical limitations such that its duty to accommodate was triggered.

The undisputed facts are that on January 3, 2012, Ms. Garcia informed Mr. Stewart that she was experiencing pain in her wrist and could no longer perform her duties at the First Sort position.  ECF No. 18, at 10; ECF No. 26, at 2.  Ms. Garcia was instructed to fill out a form reporting the incident and told to see a doctor for the purpose of detailing any medical restrictions relating to the condition of her wrist.  Ms. Garcia went to see a doctor on January 4, 2012, and returned to work the next day with a note from the doctor explaining that she should limit the use of her left wrist for approximately three to four weeks.  ECF No. 18, at 75.

Therefore, a duty to accommodate arose on the third or fourth of January 2012

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY JUDGMENT ~ 10

when Ms. Garcia gave express notice of her wrist injury and accompanying

limitations.

Cintas contends that no duty to accommodate arose prior to this point.  Ms.

Garcia disagrees and contends that Cintas' duty to accommodate was triggered at

three points prior to January 2012.  Specifically, Ms. Garcia argues (1) that Cintas

was under a continuing duty to accommodate based on their knowledge of Ms.

Garcia's previous wrist injury in August 2011; (2) that Cintas was put on notice of

the potential for aggravation of Ms. Garcia's condition in early November 2011

when she told Mr. Stewart that in her opinion she could only do the First Sort

position for approximately two weeks due to her wrist; and (3) that Cintas was

provided actual notice of Ms. Garcia's wrist injury around the end of November

2011 when she informed Mr. Stewart that her wrist was hurting again.  The Court

will examine the circumstances surrounding each of these claimed dates of notice.

### i.    *Prior notice of condition in August of 2011*

In August of 2011 Ms. Garcia filed an incident report with Cintas detailing

pain in her wrist.  Ms. Garcia's injury was evaluated and she was diagnosed with

de Quervain's tenosynovitis in her left wrist.  Ms. Garcia also filed a workers'

compensation claim relating to this incident.  There is no dispute that Cintas

accommodated Ms. Garcia's injury at that time by teaching her how to fold

coveralls with one hand.  The medical documentation in the record indicates that

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY
JUDGMENT ~ 11

Ms. Garcia's condition of de Quervain's tenosynovitis in the left wrist could last for only a matter of weeks if her use of the wrist was limited and other treatment steps were taken. ECF No. 18, at 48, 75-77. The medical evidence did not support a conclusion that Ms. Garcia suffered from a permanent injury.

Ms. Garcia admits that she was pain free in early November 2011 before she was moved to the First Sort position to replace the other worker. ECF No. 18, at 40-41, 65-66; ECF No. 26, at 2. It is undisputed that Ms. Garcia told a third-party administrator that her workers' compensation claim should be closed because she was no longer suffering from an injury, and that her workers' compensation claim was in fact closed on December 2, 2011. In addition, it is undisputed that by early November 2011 Ms. Garcia had ceased wearing her wrist splint as prescribed following her August injury. ECF No. 18, at 27-28.

Under the WLAD an employer's duty to accommodate an employee's disability ends when the employee no longer suffers from an abnormality that "substantially limits" her ability to do her job. *See* RCW 49.60.040(7)(d) (to qualify for reasonable accommodation in employment, an employee's impairment must have a "substantially limiting effect upon the individual's ability to perform his or her job"). In fact, an employer may violate the WLAD by discriminating against an employee who is perceived to be disabled but is in fact no longer disabled. *See Barnes v. Washington Natural Gas Co.*, 22 Wn. App. 576 1979).

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY JUDGMENT ~ 12

1    The Court concludes that Cintas' duty to accommodate Ms. Garcia's August

2    2011 wrist injury ended in early November 2011 when, according to her own

3    deposition testimony and declaration, Ms. Garcia was no longer substantially

4    impaired under the WLAD.

5        ii.    *Notice of likely aggravation of impairment*

6        Ms. Garcia contends that she properly notified Mr. Stewart that in her

7    opinion working in the First Sort position might aggravate her previous wrist

8    condition.  When Mr. Stewart moved Ms. Garcia to the First Sort position, Ms.

9    Garcia told Mr. Stewart that she could only do the position for approximately two

10   weeks "because of [her] wrist."  ECF No. 18, at 42-44.  The Court finds that this

11   statement is not sufficient to constitute notice of potential aggravation under the

12   WLAD.

13       An employer's duty to accommodate applies under the WLAD when an

14   employee's work will exacerbate her medical condition.  *Holland v. America West*

15   *Airlines*, 416 F. Supp. 2d 1028, 1033-34 (W.D. Wash. 2006) (discussing *Martini v.*

16   *Boeing*, 88 Wn. App. 442, 454 (1997)).  However, the duty to accommodate a

17   potential aggravation under the WLAD arises only when the employee has notified

18   the employer of the existence of an impairment *and* has produced medical

19   documentation "establish[ing] a reasonable likelihood that engaging in job

20   functions without an accommodation would aggravate the impairment to the extent

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY
JUDGMENT ~ 13

that it would create a substantially limiting effect." *Johnson v. Chevron U.S.A., Inc.*, 159 Wn. App. 18, 28-30 (2010); RCW 49.60.040(7)(d)(ii).

It is undisputed that Ms. Garcia did not provide such medical documentation to Cintas until January 5, 2013. ECF No. 18, at 75. Ms. Garcia's subjective, non-expert opinion that her condition might be aggravated by being moved to the First Sort position does not satisfy the "reasonable likelihood" standard for aggravation of an impairment under RCW 49.60.040(7)(d)(ii). Therefore, Ms. Garcia's statement that she could only do the job for approximately two weeks due to her wrist did not trigger a duty to reasonably accommodate a potential aggravation under the WLAD, nor did it renew the previous duty to accommodate the August injury.

iii.    *Ms. Garcia's report of actual pain in her wrist after moving to the First Sort position*

Ms. Garcia also claims that she alerted Mr. Stewart of an actual injury to her wrist in late November 2011 such that Cintas should have accommodated her approximately one month before she expressly told Mr. Stewart that she could no longer work in the First Sort position because of the pain in her wrist. Cintas argues that there is inconsistent evidence regarding Ms. Garcia's statements on this issue.

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY JUDGMENT ~ 14

1    At her deposition, Ms. Garcia was asked to discuss when she first informed

2    Mr. Stewart that her wrist was hurting after she was moved to the First Sort

3    position.  Ms. Garcia initially stated that she told Mr. Stewart at the time she was

4    moved to the First Sort position that in her opinion she could only work at the First

5    Sort position for approximately two weeks "because of [her] wrist."  ECF No. 18,

6    at 42.  Ms. Garcia further explained that after she was moved to the First Sort

7    position, she asked Mr. Stewart on numerous occasions whether he had found a

8    replacement for her and when it was that she would be moved out of the position.

9    Ms. Garcia explained that she did not necessarily mention that the injury to her

10   wrist was the reason for her inquiries because she assumed that Mr. Stewart knew

11   that her inquiries were related to her wrist.    ECF No. 18, at 43.

12   Upon further questioning, Ms. Garcia stated at her deposition that she

13   explicitly told Mr. Stewart in late November that her wrist was hurting.  ECF No.

14   18, at 44.  Ms. Garcia then explained that she spoke to Mr. Stewart almost every

15   day after that point and that it was "in her voice" that her wrist hurt.  ECF No. 18,

16   at 44.  In opposing summary judgment, Ms. Garcia submitted a declaration stating

17   that she told Mr. Stewart around the end of November that her wrist was hurting,

18   and thereafter "continually told him that he needed to get me out of [the First Sort

19   position]."  ECF No. 41, at 2.

20

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY
JUDGMENT ~ 15

Cintas urges the Court to find that Ms. Garcia's declaration constitutes a "sham" because her statements in the declaration are contradicted by her prior deposition testimony. As stated above, Ms. Garcia's initial deposition testimony implies that she did not expressly tell Mr. Stewart that her wrist was hurting in the first weeks after she was moved to the First Sort position. In addition, Cintas submitted evidence in the form of medical documentation and an incident report form signed by Ms. Garcia stating that the pain returned in her wrist on approximately December 26, 2011, not in November 2011. ECF No. 18, at 74; ECF No. 32-1, at 6. This evidence contradicts Ms. Garcia's claim that she reported pain beginning in late November.[1]

Under Ninth Circuit law, "a party cannot create a genuine issue of fact by an affidavit contradicting [her] prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). However, the "sham affidavit" rule

---

[1] The Court notes that this evidence also would appear to undermine Ms. Garcia's claim that she suffered from an impairment that had a "substantially limiting effect" on her ability to perform her job after she was moved to the First Sort position and prior to late December 2011. *See* RCW 49.60.040(7)(d). However the Court need not examine this issue because it finds that Ms. Garcia did not provide adequate notice triggering Cintas' duty to accommodate prior to January 3, 2012.

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY JUDGMENT ~ 16

"does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony" and rather applies only when the district court "make[s] a factual determination that the contradiction was actually a 'sham.'" *Id.* at 266-67.  Moreover, the inconsistency between a party's testimony and subsequent affidavit must be clear and unambiguous and the non-moving party "is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition." *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995).

The Court declines to find that Ms. Garcia's declaration qualifies as a "sham."  Ms. Garcia's initial deposition testimony is contradictory to the declaration she submitted at summary judgment, but Ms. Garica went on to testify at her deposition consistent with the contents of her declaration.  Therefore, the Court will not apply the "sham affidavit" rule set forth in *Kennedy*, 952 F.2d 262, and will consider Ms. Garcia's declaration and deposition testimony in evaluating the propriety of summary judgment.

However, even construing all of the evidence in in the light most favorable to Ms. Garcia, including the statements made at her deposition and in her declaration, the Court finds that Ms. Garcia has not established a genuine issue of material fact as to whether she provided Cintas notice of her disability and accompanying limitations in late November 2011.

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY JUDGMENT ~ 17

The facts of this case are similar to the facts of *Hume v. American Disposal Co.*, where the Washington Supreme Court found that the employee had not provided adequate notice under the WLAD.  124 Wn. 2d 656 (1994) (en banc).  In *Hume*, an employee who suffered from carpal tunnel syndrome in his hands made intermittent complaints of pain in his hands and requested a transfer to a position that would require less use of his hands.  *Id.* at 670-72.  The court found these actions insufficient to constitute notice because there was no evidence that the employee specifically discussed the nature of his condition with his employer at the time that he made the transfer request.  *Id.* at 672.  In addition, the Court noted that the employee had not missed any work due to the pain in his hands and was successfully completing his job assignments.  *Id.*

The record in this case indicates, at best, that Ms. Garcia made only one reference to her wrist hurting after she was transferred to the First Sort position and before she informed Mr. Stewart that she could no longer work at the position due to her wrist.  Thereafter, Ms. Garcia assumed that Mr. Stewart understood that the purpose of her transfer requests was based on her prior wrist injury and states that it was "in her voice" that her wrist hurt.  These facts do not even rise to the level of "intermittent complaints" found to be inadequate notice in *Hume*.  *See* 124 Wn. 2d at 672.  In addition, Ms. Garcia discussed the possibility of a transfer with Mr. Stewart on numerous occasions, but there is no indication that Ms. Garcia

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY JUDGMENT ~ 18

discussed her wrist condition and accompanying limitations or even explained that her request for a transfer was because her wrist hurt.   Moreover, there is no indication that Ms. Garcia missed any work or that her productivity suffered due to her wrist.

Nor can Ms. Garcia incorporate Cintas' knowledge of her August wrist condition to find that notice was satisfied in late November.  As explained previously in this Order, Ms. Garcia was indisputably pain free by early December 2011.  Therefore, Cintas' duty to reasonably accommodate the August 2011 injury was discharged.  The Court concludes that any injury allegedly occurring in late November 2011 was a separate and distinct injury requiring its own notice.

Even when viewing the evidence in the light most favorable to Ms. Garcia, the Court finds that Ms. Garcia did not provide adequate notice of her November wrist condition and accompanying physical limitations until she expressly told Mr. Stewart on January 3, 2012, that she could no longer perform work at the First Sort position due to her wrist and filled out an accompanying incident report disclosing her wrist condition.  Ms. Garcia's varied statements to Mr. Stewart in late November through December 2011 are not sufficient to raise a genuine issue of material fact on whether notice occurred at an earlier date.

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY JUDGMENT ~ 19

**B.  Whether Cintas failed to accommodate Ms. Garcia's condition**

An employer must reasonably accommodate an employee's disability unless the employer can show that doing so would place an "undue hardship" on the employer's business.  *Pulcino v. Fed. Express Corp.*, 141 Wn. 2d 629, 639 (2000), *overruled on other grounds by McClarty*, 157 Wn. 2d 214.  The employer's duty to accommodate is triggered when the employee gives notice of his or her disability.  *Id.* at 643.

To accommodate a disabled employee, the employer must take steps to help the employee continue working at her existing position or attempt to find a position compatible with her limitations.  *Griffith v. Boise Cascade, Inc.*, 111 Wn. App. 436, 442-43 (2002) (citing *Doe v. Boeing Co.*, 121 Wn. 2d at 18; *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn. 2d 102, 120 (1986)).  An employee is not entitled to their preferred accommodation; rather, the employer need only make any reasonable accommodation.  *Pulcino*, 141 Wn. 2d at 643 (citing *Snyder v. Medical Serv. Corp.*, 98 Wn. App. 315, 326 (1999)).

Cintas asserts that it met its duty to provide reasonable accommodation once Ms. Garcia provided notice of her disability in January of 2012.  It is undisputed that when Ms. Garcia produced the doctor's note indicating that she should limit the use of her left wrist, Ms. Garcia's supervisor, Mr. White, suggested that she perform the First Sort position one-handed.  ECF No. 18, at 49-52, 117.  Mr. White

additionally suggested moving Ms. Garcia to another position in the facility,

known as the "Shakeout" position, which Mr. White stated that she could perform

with one hand.  ECF No. 18, at 52-53, 117-119.

Ms. Garcia admitted that the First Sort position could have been performed

with one hand, but explained that, in her opinion, performing the First Sort position

one-handed would have been awkward and would have slowed her down too

much.  ECF No. 18, at 51-54.  Ms. Garcia did not believe that the Shakeout

position could be performed with one hand and did not attempt to perform the

position with one hand.  ECF No. 18, at 52-54.  Ms. Garcia instead repeatedly told

Mr. White that she wanted to return to her position folding coveralls and sorting

hangers.  ECF No. 18, at 49-53, 119.  Straightening and organizing used hangers in

fact required the use of both hands.  ECF No. 18, at 54.  Ms. Garcia was in this

position folding coveralls and sorting hangers when she first injured her wrist in

August 2011.  ECF No. 18, at 71.

The undisputed evidence before the Court indicates that Ms. Garcia was

offered two possible accommodations and flatly rejected both of them.  Ms. Garcia

has offered nothing but her lay opinion in support of arguing that Cintas' proposed

accommodations were not reasonable.  In fact, Ms. Garcia admitted that the First

Sort position could be done one handed as suggested, although it would be slower.

Even if Ms. Garcia were correct that doing the First Sort position one-handed

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY
JUDGMENT ~ 21

1   would not be a workable solution when production sped up at the facility, Cintas

2   could have made additional accommodations at that time or determined that a

3   different position would more suitably accommodate Ms. Garcia's limitations.

4   Moreover, the accommodation Ms. Garcia demanded, being returned to her prior

5   position folding coveralls and straightening hangers, required the use of both hands

6   and was the position that Ms. Garcia was in when she first injured her wrist.

7   Therefore, the Court concludes that Ms. Garcia's requested transfer would not have

8   been an appropriate accommodation to her wrist injury.

9         Ms. Garcia was not entitled to the accommodation that she preferred, *see*

10   *Pulcino*, 141 Wn. 2d at 643, and did not engage with Cintas in the type of

11   collaborative process envisioned by the WLAD.  *See Goodman*, 127 Wn. 2d at

12   408-09.  Thus, Cintas did not fail to make a reasonable accommodation upon

13   adequate notice of Ms. Garcia's condition and limitations.

14         Accordingly, **IT IS HEREBY ORDERED** that Defendant Cintas

15   Corporation's Amended Motion for Summary Judgment, **ECF No. 20,** is

16   **GRANTED.**

17         The District Court Clerk is hereby directed to enter this Order, enter

18   judgment for Defendant Cintas, to provide copies to counsel, and **close** this case.

19         **DATED** this 12th day of April 2013.

20         _____*s/ Rosanna Malouf Peterson*_____
          ROSANNA MALOUF PETERSON
          Chief United States District Court Judge

ORDER GRANTING CINTAS CORPORATION'S MOTION FOR SUMMARY
JUDGMENT ~ 22